UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Digital Angel Corporation, a
Delaware corporation, and Applied
Digital Solutions, Inc., a Missouri
corporation,

        Plaintiffs,

v.

Corporativo SCM, S.A. de C.V., a
Mexico corporation,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

Civil No. 05-1060 ADM/JJG

_____

Melvin N. A. Avanzado, Esq., Jeffer, Mangels, Butler & Marmaro LLP, Los Angeles, CA, and Christianna L. Finnern, Esq., Winthrop & Weinstine, P.A., Minneapolis, MN, on behalf of Plaintiffs.

Frederick T. Lowe, Esq., Florida Law Group, L.L.C., Tampa, FL, and Donald R. McNeil, Esq., Coleman, Hull & Van Vliet, PLLP, Minneapolis, MN, on behalf of Defendant.
_____

## I. INTRODUCTION

On October 14, 2005, oral argument before the undersigned United States District Judge was heard on Defendant Corporativo SCM, S.A. de C.V.'s ("Corporativo") Motion to Dismiss [Docket No. 6]. In their Complaint, Plaintiffs seek a declaratory judgment that they are not liable to Defendant for their conduct under an International Distribution Agreement ("Agreement") between the parties. For the reasons set forth herein, Defendant's Motion to Dismiss is denied.

## II. BACKGROUND

Plaintiff Digital Angel Corporation ("Digital Angel") is a Delaware corporation with its principal place of business in Minnesota. Compl. [Docket No. 1] ¶ 3. Plaintiff Applied Digital

Solutions, Inc. ("ADS") is a Missouri corporation with its principal place of business in Florida. Id. ¶ 4. ADS is the parent corporation of Digital Angel. Krawitz Aff. [Docket No. 11]. Defendant Corporativo is a Mexican corporation with its principal place of business in Colonia del Valle, Mexico City, DF, Mexico. Compl. ¶ 5.

On or about August 16, 2002, Digital Angel and Corporativo entered into an Agreement making Corporativo the exclusive distributor of Digital Angel's sophisticated location device products in Mexico. Compl. Ex. A. ADS also signed the agreement. Id. The Agreement contains a forum selection clause designating Minnesota state or federal court as the appropriate jurisdiction for filing a lawsuit in the first instance, and a choice of law clause, which provides that the "Agreement shall be governed by and construed in accordance with the internal laws of the State of Minnesota . . . ." Id. Plaintiffs allege that beginning some time in 2003, the Digital Angel products to be distributed by Corporativo did not function in Mexico because Corporativo did not have the requisite wireless technology. Compl. ¶ 12. Plaintiffs further allege that Corporativo never purchased any products under the Agreement and ultimately cancelled the Agreement in 2003. Compl. ¶¶ 14-15.

On May 19, 2005, Frederick T. Lowe ("Lowe") wrote to Richard J. Sullivan ("Sullivan"), former Chief Executive Officer of ADS, informing Sullivan that he represents Corporativo in an impending lawsuit against Digital Angel, ADS, and their respective present and/or former principals, Scott R. Silverman and Richard J. Sullivan. McNeil Aff. [Docket No. 8] Ex. A. Lowe stated that "great time and effort" had been expended investigating the facts and circumstances surrounding the Agreement, that "fraud" had been verified and documented by those with direct knowledge, and that Corporativo would be "moving forward legally" unless

Digital Angel and ADS were willing to enter into expedited settlement negotiations.  Id.  Lowe further stated that the minimum amount Corporativo would accept is $2,500,000 and "[i]f this number is not acceptable, negotiations would in all likelihood be fruitless and as a result, no pre-suit meeting would be necessary."  Id.  Lowe closed by stating "please respond within ten (10) days from the receipt of this letter.  No response from you will be considered a rejection of our present position and offer to settle this matter before an action is filed."  Id.

Michael Krawitz, Executive Vice President and General Counsel for ADS asserts that neither Digital Angel nor ADS was willing to pay—or even discuss paying—$2,500,000, and so he retained counsel for the Plaintiffs.  Krawitz Aff.  On June 2, 2005, Melvin N. A. Avanzado ("Avanzado") responded to Lowe's letter, on behalf of Digital Angel and ADS, by writing that the settlement demand "improperly threatens an action in an improper venue (Florida) and makes such threats on claims which are barred by the parties' two year limitations period."  McNeil Aff. Ex. B.  Avanzado also informed Lowe that Digital Angel and ADS had filed an action in federal court in Minneapolis in order to "take all steps necessary to vindicate [their] rights."  Id.  Lowe responded on July 13, 2005 that the action filed by Digital Angel and ADS was "premature from the standpoint of where the parties were from a possibility of negotiating a reasonable settlement."  McNeil Aff. Ex. C.  Lowe also indicated that a Florida suit was imminent, stating that "[s]ince the fraudulent action(s) emanated from the State of Florida, it is not only the proper venue, but the case will be tried in Florida, if necessary," and "if you simply desire to 'let the dogs loose,' so be it, and we shall deal with your Minnesota case and we will file our Florida case so that you may have it to deal with."  Id.  Defendant then filed this Motion to Dismiss.

### III. DISCUSSION

A.  **Motion to Dismiss Standard**

Rule 12 of the Federal Rules of Civil Procedure provides that a party may move to dismiss a complaint for lack of subject matter jurisdiction.  Fed. R. Civ. Pro. 12(b)(1).  "[I]f a plaintiff lacks standing, the district court has no subject matter jurisdiction."  Faibisch v. Univ. of Minn., 304 F.3d 797, 801 (8th Cir. 2002).  "Whether a plaintiff has standing to sue 'is the threshold question in every federal case, determining the power of the court to entertain the suit.'"  McClain v. Am. Econ. Ins. Co., 424 F.3d 728, 731 (8th Cir. 2005), citing Steger v. Franco, Inc., 228 F.3d 889, 892 (8th Cir. 2000).  Rule 12(b)(1) also encompasses dismissal because the case is not yet ripe for adjudication.  See Wax 'n Works v. City of St. Paul, 213 F.3d 1016, 1020 (8th Cir. 2000); Christopher Lake Dev. Co. v. St. Louis County, 35 F.3d 1269 (8th Cir. 1994).

Rule 12 of the Federal Rules of Civil Procedure further provides that a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. Pro. 12(b)(6).  In considering a motion to dismiss, the pleadings are construed in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true. Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994); Ossman v. Diana Corp., 825 F. Supp. 870, 879-80 (D. Minn. 1993).  Any ambiguities concerning the sufficiency of the claims must be resolved in favor of the nonmoving party.  Ossman, 825 F. Supp. at 880.  "A motion to dismiss should be granted as a practical matter . . . only in the unusual case in which the plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief."  Frey v. City of Herculaneum, 44 F.3d 667, 671 (8th Cir. 1995).

**B.     Ripeness**

The Declaratory Judgment Act provides "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "The Declaratory Judgment Act's requirement of an 'actual controversy' is no more than a recognition that the Constitution limits the exercise of judicial power to 'cases' and 'controversies' in the constitutional sense." Sherwood Med. Indus., Inc. v. Deknatel, Inc., 512 F.2d 724, 726 (8th Cir. 1975). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Maryland Cas. Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941).

Defendant argues that the Court should dismiss this case because it is not yet ripe for adjudication. Plaintiffs respond that courts have held in the patent context that where a party has a reasonable apprehension of an imminent lawsuit, an actual controversy exists sufficient to afford declaratory relief if warranted. See Sherwood Med. Indus., Inc., 512 F.2d at 727-28; Royal Pet Inc. v. Edwards, No. 05-825, 2005 WL 2290826, at *3 (D. Minn. Sept. 20, 2005); Medtronic, Inc. v. Mine Safety Appliances Co., 468 F. Supp. 1132, 1135 (D. Minn. 1979); Owatonna Mfg. Co., Inc. v. Melroe Co., 301 F. Supp. 1296, 1302 (D. Minn. 1969). Plaintiffs also cite a Seventh Circuit case for the proposition that in the context of a contract dispute, once a defendant sends a plaintiff a letter threatening a lawsuit unless a payment is made, the dispute has ripened into a justiciable controversy potentially warranting declaratory relief. NUCOR v.

Aceros y Maquilas de Occidente, S.A. de C.V., 28 F.3d 572, 578 (7th Cir. 1994).

In this case, Lowe's letter was sufficient to provide the Plaintiffs with a reasonable apprehension of an impending lawsuit, causing the present case to ripen into an actual controversy. Lowe demanded a minimum $2,500,000 from Plaintiffs to settle Corporativo's alleged claim against them, and further stated "[i]f this number is not acceptable, negotiations would in all likelihood be fruitless and as a result, no pre-suit meeting would be necessary." McNeil Aff. Ex. A. Lowe also stated "please respond within ten (10) days from the receipt of this letter. No response from you will be considered a rejection of our present position and offer to settle this matter before an action is filed." Id. Lowe's strongly worded letter clearly informs Plaintiffs that if they don't accept the $2,500,000 settlement figure, Corporativo will file suit. Plaintiffs assert that they were not willing to pay, or even discuss paying, $2,500,000 to Corporativo. Krawitz Aff. Defendant's threat is sufficient to create an actual case or controversy between the parties and gives this Court the discretionary authority to hear Plaintiffs' declaratory judgment action.

**C.     Standing**

Defendant also argues that Plaintiffs lack standing to bring their declaratory judgment action because no injury in fact exists. "To show standing under Article III of the U.S. Constitution, a plaintiff must demonstrate (1) injury in fact, (2) a causal connection between that injury and the challenged conduct, and (3) the likelihood that a favorable decision by the court will redress the alleged injury." Young Am. Co. v. Affiliated Computer Serv. (ACS), Inc., 424 F.3d 840, 843 (8th Cir. 2005), citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). An injury in fact "must consist of 'an invasion of a legally protected interest which is (a)

concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.'" Young Am. Co., 424 F.3d at 843.  Defendant argues that to date, its only action has been the sending of a letter to Plaintiffs inviting discussion, and the threat of a future lawsuit is at best conjectural or hypothetical.  However, Defendant's letter did not invite discussion and unequivocally stated that "no pre-suit meeting would be necessary" if Plaintiffs failed to accept Defendant's settlement demand.  As a result, the threat of a lawsuit, potentially in an improper forum under the forum selection clause, was sufficiently concrete, particularized, actual, and imminent to provide Plaintiffs with standing for a declaratory judgment action.

**D.    Proper Forum**

Defendant also avers that Digital Angel and ADS brought suit in the District of Minnesota to deny Corporativo the forum of its choice.  Plaintiffs respond that they did not file their lawsuit in an inconvenient forum but rather filed suit in the forum chosen by the parties in the Agreement—state or federal court in Minnesota.  The Agreement in this case contains a forum selection clause, stating:

> Both of the parties hereby irrevocably and unconditionally submit, . . . to the jurisdiction of any court of the State of Minnesota sitting in Minneapolis or St. Paul, or any Federal court of the United States of America sitting in the State of Minnesota, . . . in any suit, . . . arising out of or relating to this Agreement, . . . and each of the Parties hereto hereby irrevocably and unconditionally agrees that all claims in respect of any such suit, . . . may be heard and determined in such State of Minnesota Court or Federal court.  It **shall** be a condition precedent to each Party's right to bring any such suit, . . . that such suit, . . . in the first instance, be brought in such State of Minnesota court or, to the extent permitted by law, in such Federal court . . . and if each of such State of Minnesota court and such Federal court refuses to accept jurisdiction with respect thereto, such suit, . . . may be brought in any other court of competent jurisdiction.

Compl. Ex. A (emphasis added).  Because the dispute "arises out of or relates to" the Agreement, Plaintiffs appropriately filed their lawsuit in a Minnesota federal court in the first instance as

required by the forum selection clause.  Cf. iNet Directories, LLC v. Developershed, Inc., 394 F.3d 1081 (8th Cir. 2005); Rainforest Café, Inc. v. EklecCo, L.L.C., 340 F.3d 544 (8th Cir. 2003).  Presumably, Defendant could have contracted for a different forum selection clause or none at all if it didn't want to be required to bring or defend suits related to the Agreement in Minnesota.  Also, at this point, Defendant's bare allegations of fraud are insufficient to render the forum selection clause unenforceable.  See Marano Enter. of Kansas v. Z-Teca Rest., L.P., 254 F.3d 753, 757 (8th Cir. 2001).

**E.     Fraud**

Finally, Defendant avers that this Court should decline to exercise its discretion to hear this declaratory action.  Any relief granted will not terminate the controversy between the parties because the issue of fraud will still remain, including but not limited to the theory that Defendant was fraudulently induced to enter into the Agreement.  It is well settled that the Declaratory Judgment Act grants federal courts discretion to make a declaration of rights but does not impose a duty to do so.  Alsager v. Dist. Court of Polk County, Iowa, 518 F.2d 1160, 1163 (8th Cir. 1975).  Courts are guided by two principals for determining when to render a declaratory judgment: "1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and 2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to these proceedings."  Id. at 1163-64, citing Professor E. Borchard, Declaratory Judgments 299 (2d ed. 1941).  In addition, "[o]ne purpose of the Declaratory Judgment Act is to allow a prospective defendant to sue in order to establish its nonliability."  Owatonna Mfg. Co., Inc., 301 F. Supp. at 1299, citing Beacon Theaters, Inc. v. Westover, 359 U.S. 500, 504 (1959).  In this case, a declaratory judgment would help to clarify and settle the

legal issues, and would afford some relief from the uncertainty and controversy giving rise to these proceedings, even if Defendant's potential fraudulent inducement claim remains. Consequently, the Court will exercise its discretion to hear this action.

### IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss [Docket No. 6] is **DENIED**.

BY THE COURT:

      s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: December 9, 2005.